[No. 84296-5.   En Banc.]
Argued March 15, 2011.   Decided June 16, 2011.

PHOENIX DEVELOPMENT, INC., ET AL., *Respondents*, v. THE CITY OF WOODINVILLE ET AL., *Petitioners*.

---

822

*Greg A. Rubstello* (of *Ogden Murphy Wallace PLLC*); *Philip A. Talmadge* (of *Talmadge/Fitzpatrick*); and *J. Richard Aramburu* and *Jeffrey M. Eustis* (of *Aramburu & Eustis LLP*), for petitioners.

*George R. Hill* (of *McCullough Hill PS*) and *John M. Groen* (of *Groen Stephens & Klinge LLP*), for respondents.

*Timothy M. Harris* on behalf of Building Industry Association of Washington, amicus curiae.

*Daniel B. Heid* on behalf of Washington State Association of Municipal Attorneys and Association of Washington Cities, amici curiae.

*Brian T. Hodges* and *Daniel A. Himebaugh* on behalf of Pacific Legal Foundation, amicus curiae.

¶1 J.M. Johnson, J. — In 2007, the city council of Woodinville (City) unanimously denied two applications submitted by Phoenix Development Inc. to rezone undeveloped property in northeast Woodinville. Seeking reversal of the City's decision, Phoenix filed a land use petition in King County Superior Court. The superior court dismissed the petition, holding that Phoenix failed to establish compliance with any of the six standards set out in RCW 36.70C.130(1). The Court of Appeals reversed and remanded for further consideration. We reverse the Court of Appeals and uphold the City's decision, thus affirming the trial court.

FACTS AND PROCEDURAL HISTORY

¶2 Phoenix owns two undeveloped properties in northeast Woodinville, referred to as the Wood Trails proposal and the Montevallo proposal. The properties have been zoned as R-1 (one dwelling per acre) since Woodinville's incorporation in 1993.

¶3 In June 2004, Phoenix asked the City to amend the zoning map for these two properties. Phoenix asked the City to rezone each from R-1 to R-4 (four dwellings per acre) and submitted preliminary plat applications for approval. Phoenix planned to build 66 houses on 38.7 acres at Wood Trails (1.7 dwellings per acre) and 66 houses on 16.48 acres at Montevallo (4.005 dwellings per acre).[1]

¶4 City staff engaged in two years of environmental review and analyzed whether the proposals complied with Woodinville's comprehensive plan and the City's criteria for a rezone under Woodinville Municipal Code (WMC) 21-.44.070.[2] The staff concluded that both proposals were

---

[1] The alternative conceptual plan recommended by the hearing examiner allowed for 56 houses on 16.48 acres (3.398 dwellings per acre). Hr'g Examiner's Montevallo Decision (May 16, 2007) at 4-5, 15.

[2] WMC 21.44.070 states:

A zone reclassification shall be granted only if the applicant demonstrates that the proposal is consistent with the Comprehensive Plan *and* applicable

consistent with the purpose statements for R-4 zones[3] and stated that two of the three criteria required to rezone were met, WMC 21.44.070(2) and (3). The staff report did not make a recommendation with respect to the first criterion—the "demonstrated need" requirement of WMC 21.44.070(1)—stating that this criterion " 'ultimately requires an objective judgment by the hearing examiner and city council based upon relevant City plans, policies, goals, and timeframes.' " *Phoenix Dev., Inc. v. City of Woodinville*, 154 Wn. App. 492, 499, 229 P.3d 800 (2009) (quoting Wood Trails Staff Report at 32; Montevallo Staff Report at 27). City staff recommended approval of the requested rezones if the "demonstrated need" requirement was met.

¶5 Public hearings were held in March and April 2007. The hearing examiner considered extensive testimony and documentary evidence, including the "Final Environmental Impact Statement" and a 2,144 page analysis of the proposals submitted by the Concerned Neighbors of Wellington (CNW). On May 16, 2007, the hearing examiner recommended that the City approve the rezones from R-1 to R-4.

---

functional plans at the time the application for such zone reclassification is submitted, *and* complies with the following criteria:

(1) There is a demonstrated need for additional zoning as the type proposed.

(2) The zone reclassification is consistent and compatible with uses and zoning of the surrounding properties.

(3) The property is practically and physically suited for the uses allowed in the proposed zone reclassification.

(Emphasis added.)

[3] The purpose statements for R-1 and R-4 zones are found in WMC 21.04.080:

(2) Use of this zone is appropriate in residential areas designated by the Comprehensive Plan as follows:

(a) The R-1 zone on or adjacent to lands with area-wide environmental constraints, or in well-established subdivisions of the same density, which are served at the time of development by public or private facilities and services adequate to support planned densities;

(b) The R-4 through R-8 zones on urban lands that are predominantly environmentally unconstrained and are served at the time of development, by adequate public sewers, water supply, roads and other needed public facilities and services.

WMC 21.04.020 provides that the WMC 21.04.080 purpose statements "shall be used to guide the application of the zones and designations to all lands in the City of Woodinville."

The hearing examiner also recommended approval of the preliminary plat applications subject to numerous conditions. CNW appealed to the City.

¶6 The City unanimously denied the rezone requests and preliminary plat applications after conducting a closed record review of the hearing examiner's recommendation and holding a public meeting. Among other things, the City found that there was no "demonstrated need" to rezone the properties, that rezoning was inappropriate because of deficient facilities and services (other than sewer), and that rezoning would be inconsistent with the comprehensive plan. In finding of fact (FF) 6 of both decisions, the City stated that it was acting in its "legislative capacity" when it found that the R-1 zone was appropriate for the properties. Clerk's Papers (CP) at 21, 28.

¶7 Phoenix filed a land use petition under the Land Use Petition Act (LUPA)[4] in superior court, seeking reversal of the City's decision, approval of the Wood Trails and Montevallo proposals, and at least $5,000,000 in damages. The superior court dismissed the petition, holding that Phoenix failed to establish compliance with the six standards set out in RCW 36.70C.130(1). Phoenix appealed. *Phoenix*, 154 Wn. App. 492.

¶8 Although not saying so directly, the Court of Appeals concluded that Phoenix had met three of the standards set out in RCW 36.70C.130(1). *See Phoenix*, 154 Wn. App. at 503, 510-11, 514, 516. The Court of Appeals reversed and remanded to the City for reconsideration of Phoenix's preliminary plat applications. *Id.* at 516. Both the City and CNW petitioned for review, which was granted. *Phoenix Dev., Inc. v. City of Woodinville*, 169 Wn.2d 1006, 236 P.3d 206 (2010).

## STANDARD OF REVIEW

¶9 The denial of a site-specific rezone is a land use decision. *Woods v. Kittitas County*, 162 Wn.2d 597, 610, 174

[4] Ch. 36.70C RCW.

P.3d 25 (2007); RCW 36.70B.020(4). In reviewing a land use decision, we stand in the same position as the superior court. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 751, 49 P.3d 867 (2002) (citing *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

¶10 LUPA provides the exclusive means for judicial review of a land use decision (with the exception of those decisions separately subject to review by bodies such as the growth management hearings boards). *Woods*, 162 Wn.2d at 610. Under LUPA, courts may grant relief from a site-specific rezone denial only if a petitioner has met its burden of establishing one of the following standards:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1). Only standards (a), (b), (c), and (d) are arguably at issue.

¶11 Standards (a), (b), (e), and (f) present questions of law that we review de novo. *Phoenix*, 154 Wn. App. at 502; *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 468, 61 P.3d 1141 (2003). When reviewing a challenge to the sufficiency of the evidence under subsection (c), we view facts and inferences in a light most favorable to the party that prevailed in the highest

forum exercising fact-finding authority, in this case the City and CNW. *Woods*, 162 Wn.2d at 617. Under the substantial evidence standard, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true. *Wenatchee Sportsmen*, 141 Wn.2d at 176. A finding is clearly erroneous under subsection (d) when, although there is evidence to support it, the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed. *Id.* (citing *Norway Hill Pres. & Prot. Ass'n v. King County Council*, 87 Wn.2d 267, 274, 552 P.2d 674 (1976)).

¶12 Finally, the court may affirm or reverse the land use decision under review or remand it for modification or further proceedings. RCW 36.70C.140. If the decision is remanded for modification or further proceedings, the court may make such an order as it finds necessary to preserve the interests of the parties and the public, pending further proceedings or action by the local jurisdiction. *Id.*

ANALYSIS

¶13 The Court of Appeals reversed the City's land use decision for four reasons: (1) substantial evidence does not support the City's decision that the proposed rezones are *not* needed;[5] (2) substantial evidence in light of the entire record does not support the City's conclusion that adequate services *cannot* be provided to Wood Trails and Montevallo;[6] (3) the City engaged in an unlawful legislative procedure during a quasi-judicial decision-making process, and such error was not harmless;[7] and (4) its conclusion that the proposed rezones are inconsistent with the comprehensive plan is an erroneous interpretation of the law or a clearly erroneous application of the law.[8] Accordingly, the court

---

[5] *See Phoenix*, 154 Wn. App. at 511.

[6] *See id.* at 510.

[7] *See id.* at 503.

[8] *See id.* at 514.

reversed the City's land use decision and remanded for consideration of the plat applications. *Phoenix*, 154 Wn. App. at 516. We address the Court of Appeals' holdings in turn.

## A. Substantial Evidence Supports the City's Decision that the Proposed Rezones Are Not Needed

### 1. *We defer to the City's interpretation of what constitutes a "demonstrated need" under WMC 21.44.070(1)*

¶14 When construing an ordinance, a " 'reviewing court gives considerable deference to the construction of' the challenged ordinance 'by those officials charged with its enforcement.' " *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 42, 156 P.3d 185 (2007) (quoting *Gen. Motors Corp. v. City of Seattle*, 107 Wn. App. 42, 57, 25 P.3d 1022 (2001)); *see also Keller v. City of Bellingham*, 92 Wn.2d 726, 731, 600 P.2d 1276 (1979); *Morin v. Johnson*, 49 Wn.2d 275, 300 P.2d 569 (1956). Although this is not a Growth Management Act (GMA) (ch. 36.70A RCW) case,[9] to the extent that the GMA is implicated, we note that the GMA does not prescribe a single approach to growth management. *Viking Props., Inc. v. Holm*, 155 Wn.2d 112, 125, 118 P.3d 322 (2005). Instead, the legislature specified that " 'the ultimate burden and responsibility for planning, harmonizing the planning goals of [the GMA], and implementing a county's or city's future rests with that community.' " *Id.* (alteration in original) (quoting RCW 36.70A.3201). Thus, the GMA acts exclusively through local governments and is to be construed with the requisite flexibility to allow local governments to accommodate local needs. *Id.* at 125-26. These principles of deference apply to a local government's site-specific land use decisions where the GMA considerations play a role in its ultimate decision.

---

[9] *Wenatchee Sportsmen*, 141 Wn.2d at 172-73 ("site-specific rezones are project permits and hence not development regulations under the GMA"); *Woods*, 162 Wn.2d at 614 ("a site-specific rezone cannot be challenged for compliance with the GMA").

¶15 WMC 21.44.070 states that a zone reclassification "shall be granted only if . . . (1) [t]here is a demonstrated need for additional zoning as the type proposed." The City interpreted the "demonstrated need" criterion under WMC 21.44.070(1) to require "an objective judgment by the City Council based upon plans, goals, policies and timeframes." CP at 193 (FF 14), 200 (FF 13). To this end, the City found that "the proposed rezone is not 'needed' at this time" because current property zoning is consistent with its comprehensive plan;[10] the City is on target to meet its growth targets for 2022;[11] the City currently has a diversity of housing to allow for a wide variety of housing types, incomes, and living situations;[12] and the City has prioritized development of the downtown area to implement the GMA, "Vision 2020" (a long-range growth and transportation strategy for the Puget Sound region), and relevant county-wide planning policies.[13] We defer to the City's determination of what constitutes "demonstrated need" under WMC 21.44.070(1) and hold that the City properly interpreted its own ordinance to require a showing that a rezone is needed to achieve larger policy objectives.

2. *Substantial evidence supports the City's decision that rezoning the properties is not needed at this time*

¶16 When reviewing a challenge to the sufficiency of the evidence under subsection (c), we view facts and inferences in a light most favorable to the party that prevailed in the highest forum exercising fact-finding authority, in this case the City and CNW. *Woods*, 162 Wn.2d at 617. Under the substantial evidence standard, there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true. *Wenatchee Sports-*

---

[10] CP at 22 (FF 13), 28 (FF 14).

[11] CP at 21-22, 29 (FF 7).

[12] CP at 22, 29 (FF 8).

[13] CP at 22 (FF 16), 29-30 (FF 17).

*men*, 141 Wn.2d at 176. We do not weigh the evidence or substitute our judgment.

¶17 A sufficient quantum of evidence exists in the record to persuade a reasonable person that rezoning is not needed at this time. The CNW analysis, for example, is a 2,144 page, three-volume set of information that shows, among other things, that the City is meeting all of its housing goals, is exceeding its growth targets, and has approved other developments to provide for Woodinville's housing and growth needs. CNW Analysis, vol. 2, § 3. Additionally, Ray Sturtz, the City's planning director, stated at the March 14, 2007, public hearing that "[t]he bottom line is the City does not *need* any residential rezones to meet its GMA obligation or comply with its Comprehensive Plan and meet the goals and visions stated therein." CP at 285 (emphasis added). Evidence was also presented that, when considering market demand as the measure of "need," there is a shortage of R-1 properties, not R-4 lots. *Id.* at 285-86.

¶18 Although there is also evidence in the record to support Phoenix's claim that there is a "need" to rezone the properties, the court's role is not to determine whether evidence may support one decision over another. The standard of review here is to determine whether there is a sufficient quantum of evidence in the record to persuade a reasonable person that rezoning is not needed at this time. The evidence presented by the City and CNW is sufficient to persuade a person that rezoning is not needed at this time, in light of the City's interpretation of "demonstrated need" as stated above.

¶19 Supporting this conclusion, City staff also acknowledged there was no need to approve Phoenix's rezone request:

> [I]t is the burden of the applicant to demonstrate "need" which can be determined in a number of ways. The city has evaluated "need" based on residentially available or developable lands, population allocation, and current forecast of consumption of residential lots. *Using this information only, R-4 is not necessary at this time or until 2022, but may at a later time.*

Montevallo Staff Report at 24; Wood Trails Staff Report at 29 (emphasis added). Elsewhere, the staff also noted that "[t]he Montevallo subdivision, as proposed, *could assist* in accommodating the future growth forecast to 2022," but noted that "*there are other opportunities to accommodate that growth* that is already being accounted for in current residential development other places in the city." Montevallo Staff Report at 11 (emphasis added). City staff also noted:

> *Given that the City is currently meeting and/or exceeding its growth targets through approval of substantial residential development elsewhere within the City's jurisdiction*, the extent to which a "demonstrated need" for additional R-4 zoning exists is potentially subject to differing interpretations. While some code and Comprehensive Plan provisions can be construed as supporting further development within the Low Density Residential areas of the City, the extent, character and timing of any such development is not indelibly predetermined.

Montevallo Staff Report at 20; Wood Trails Staff Report at 32 (emphasis added).

### B. Substantial Evidence Supports the City's Decision under WMC 21.44.070(2) and the General Rules Governing Rezone Applications

¶20 WMC 21.44.070 is the linchpin for determining whether a rezone should be granted by the City. Thus, in order to deny a rezone, the City need only find that one of the requirements is not satisfied. Because substantial evidence supports the City's determination that Phoenix failed to satisfy WMC 21.44.070(1), the claim fails. In contrast to cases such as *Woods*, 162 Wn.2d 597, in which we analyzed each enumerated requirement of former Kittitas County Code 17.98.020(E) (1996) under the standards of RCW 36.70C.130(1), here we need only to find that *one* of the City's conclusions under WMC 21.44.070 withstands our review under RCW 36.70C.130(1) (i.e., there is no demonstrated need for the rezone). This is because the site-specific rezone requested in this case was *denied*, whereas it was *approved* by the county in *Woods*.

¶21 Nonetheless, substantial evidence in the record also supports, at a minimum, the City's decisions that rezoning to R-4 is not consistent and compatible with the uses and zoning of surrounding properties under WMC 21.44.070(2);[14] that conditions have not changed since the original zoning;[15] and that the rezone does not bear a substantial relationship to the public health, safety, morals, or welfare.[16] Thus, Phoenix's claim also fails under the more general rules we apply to rezone applications: "(1) there is no presumption of validity favoring the action of rezoning; (2) the proponents of the rezone have the burden of proof in demonstrating that conditions have changed since the original zoning; and (3) the rezone must bear a substantial relationship to the public health, safety, morals, or welfare." *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 874-75, 947 P.2d 1208 (1997) (citing *Parkridge v. City of Seattle*, 89 Wn.2d 454, 462, 573 P.2d 359 (1978)).[17]

C.  Former WMC 21.04.080(1) (2001) Does Not Require the City To Approve a Rezone Application Even If "Adequate Services" Can Be Provided

¶22 Former WMC 21.04.080(1) states, in pertinent part, that *"Developments with densities less than R-4 are allowed only if adequate services cannot be provided."*

---

[14] *See, e.g.*, CNW Analysis vols. 1-3.

[15] *Id.*

[16] *Id.*

[17] We also note our long-standing precedent that courts " 'do not possess the power to amend zoning ordinances or to rezone a zoned area.' " *Open Door Baptist Church v. Clark County*, 140 Wn.2d 143, 161, 170, 995 P.2d 33 (2000) (quoting *Bishop v. Town of Houghton*, 69 Wn.2d 786, 792, 420 P.2d 368 (1966)); *see also McNaughton v. Boeing*, 68 Wn.2d 659, 414 P.2d 778 (1966); *State ex rel. Gunning v. Odell*, 58 Wn.2d 275, 362 P.2d 254 (1961). LUPA did not abrogate this rule. *Ballard Square Condo. Owners Ass'n v. Dynasty Constr. Co.*, 158 Wn.2d 603, 146 P.3d 914 (2006); *In re Marriage of Williams*, 115 Wn.2d 202, 208, 796 P.2d 421 (1990).

(Emphasis added.)[18] The Court of Appeals held that former WMC 21.04.080 *"requires* that the city approve an otherwise qualified rezone application unless adequate services cannot be provided." *Phoenix*, 154 Wn. App. at 515-16 (emphasis added). This is not supported by a plain reading of the ordinance, which yields two possibilities: (1) if adequate services *cannot* be provided, then developments with densities less than R-4 are *allowed* (not required) and (2) if developments with densities less than R-4 are *not allowed*, then adequate services *can* be provided. Former WMC 21.04.080 does not require the City to rezone under any circumstance—this work is done by WMC 21.44.070.

¶23 Phoenix argues that former WMC 21.04.080 creates the possibility that land currently zoned as R-1 cannot be developed (without rezoning), even though adequate services can be provided. This may be true, but it simply does not follow from this logical possibility that the City is *required* by former WMC 21.04.080 to approve an otherwise qualified rezone application just because adequate services can be provided.

¶24 WMC 21.04.020 confirms that WMC 21.04.080 does not *require* anything (such as a rezone) if adequate services can be provided, only that such a circumstance "shall guide" zone designations.[19] In sum, WMC 21.04.080(1) does not *require* the City to approve a rezone application even if

---

[18] The italicized clause in WMC 21.04.080(1)(a) is no longer part of that ordinance; Phoenix could develop the properties as R-1 land if it were to submit a renewed application. WMC 21.04.080.

[19] WMC 21.04.020 states:

The purpose statements for each zone and map designation set forth in the following sections shall be used *to guide* the application of the zones and designations to all lands in the City of Woodinville. The purpose statements also *shall guide* interpretation and application of land use regulations within the zones and designations, and any changes to the range of permitted uses within each zone through amendments to this title.

(Emphasis added.) To this end, WMC 21.04.080(2)(a)-(b) also guides, but does not require, a determination by the City under WMC 21.44.070. *See supra* note 3. This conflicts with the Court of Appeals' interpretation of WMC 21.04.020—that it is a mandate requiring the City to rezone property from R-1 to R-4 if adequate services can be provided. *Phoenix*, 154 Wn. App. at 506.

"adequate services" can be provided. Thus, we do not reach the issue of whether substantial evidence supports the City's determination that there are "deficient public facilities and services (other than sewer)" to support the Wood Trails and Montevallo properties as an R-4 zone. CP at 24, 31, 195, 202. The City's decision to rezone does not turn on this issue.

### D.   The City Did Not Engage in an Unlawful Procedure

¶25 Phoenix argues that the City engaged in an unlawful procedure by invoking its legislative authority during a quasi-judicial proceeding, allegedly "adopt[ing] a new policy rather than applying existing policies and regulations." Answer to Pet. for Review at 5. Because the City is bound to follow its own ordinances governing rezone applications, we agree with Phoenix that a city's decision to rezone is a quasi-judicial act. *See Woods*, 162 Wn.2d at 616. However, we also hold that the City's action was not legislative, although it was mischaracterized as such.

¶26 An action is legislative if it declares or prescribes a new law, policy, or plan. *Ruano v. Spellman*, 81 Wn.2d 820, 823-24, 505 P.2d 447 (1973). FF 6 does not declare or prescribe a new law, policy, or plan or even modify existing standards. Rather, it makes statements that are directly tied to existing policies, and to the general rules governing rezone applications. *Compare* CP at 21, 28 (FF 6), *with* WMC 21.04.080, WMC 21.44.070, *and Citizens for Mount Vernon*, 133 Wn.2d at 874-75. If anything, FF 6 is a restatement of the evidence in the record supporting its ultimate conclusions, not an unlawful procedure.

¶27 However FF 6 is characterized, it is not fatal. *See* RCW 36.70C.130(1)(a) (stating that an unlawful procedure error may be harmless). Substantial evidence in the record supports the City's conclusion that a "demonstrated need" for a rezone was not shown—a required element to approve Phoenix's application.

E.   The City Did Not Err When It Concluded that the Proposed Rezones Are Inconsistent with the Comprehensive Plan

1.   *The City's conclusion is not an erroneous interpretation of the law*

¶28   Under RCW 36.70C.130(1)(b), Phoenix must establish that the City's "decision is an erroneous interpretation of the law, *after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise.*" (Emphasis added.) Since its incorporation in 1993, it has been an express goal and vision of the City "to preserve our Northwest Woodland Character." Montevallo Staff Report at 5. Indeed, the first goal listed in the land use section of the City's comprehensive plan is "[t]o guide the City's population growth in a manner that maintains or improves Woodinville's quality of life, environmental attributes, and *Northwest woodland character.*" CP at 420 (Goal LU-1) (emphasis added). Therefore, to be consistent with the comprehensive plan, Phoenix must establish that its development would maintain or improve Woodinville's "Northwest woodland character."

■■■ ¶29   The R-1 zone area represents approximately 30 percent of the total acres of the city and approximately 50 percent of the residentially zoned land. Wood Trails Staff Report at 7; Montevallo Staff Report at 5. It also contains a significant amount of the city's native tree cover and wooded hillsides, "the primary elements that define Northwest Woodland Character." Wood Trails Staff Report at 7; Montevallo Staff Report at 5. As the City staff reports noted, "[W]hile the City strives to fulfill its obligation to provide housing, it will be important to take advantage of the carrying capacity outside of the R-1 Zone area in order to retain these important and unique elements for future generations until the need is identified." Wood Trails Staff Report at 7; Montevallo Staff Report at 5. Although the City staff concluded that the proposals complied with the com-

prehensive plan,[20] it is the City's final decision that controls our review.

■ ¶30 Phoenix argues that the Wood Trails and the Montevallo proposals are consistent with the comprehensive plan because the developments would reduce urban sprawl. *See, e.g.*, Answer to Pet. for Review at 17-19. Phoenix also notes that the hearing examiner found that the proposals were "reasonably compliant with the Comprehensive Plan" after examining eight land use policies, two housing policies, three community design policies, one capital facilities policy, and four environmental policies. Appellants' Br. at 37-39; Hr'g Examiner's Wood Trails Decision (May 16, 2007) at 9; Hr'g Examiner's Montevallo Decision (May 16, 2007) at 8. The City did not cite any comprehensive plan policy in its final decision. *See* CP at 20-32. We defer to the City's construction of what is consistent with its comprehensive plan and hold that the City's conclusion is not an erroneous interpretation of the law. *See Viking Props.*, 155 Wn.2d at 125-26.

### 2. *The City's conclusion is not a clearly erroneous application of the law*

¶31 A finding is clearly erroneous under RCW 36.70C-.130(1)(d) when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Ancheta v. Daly*, 77 Wn.2d 255, 259-60, 461 P.2d 531 (1969) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)). Given the deference afforded to the City to implement its comprehensive plan, we hold that its decision was not clearly erroneous in light of the evidence.

### CONCLUSION

¶32 Substantial evidence in the record supports the City's decision to deny Phoenix's request under the control-

---

[20] Wood Trails Ex. 1; Montevallo Ex. 1.

ling city ordinance, WMC 21.44.070. Courts defer to local government decisions under the laws and rules applicable to such decisions. The City is not required to rezone to R-4 in every case where adequate services can be provided, and it did not err when it concluded that the proposed rezones are inconsistent with its own comprehensive plan. We reverse the Court of Appeals and affirm the trial court.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, STEPHENS, and WIGGINS, JJ., concur.

Reconsideration denied September 8, 2011.