# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PARK JUNCTION LLC, | No. 56857-8-II |
| Respondent, | |
| v. | |
| PIERCE COUNTY, | UNPUBLISHED OPINION |
| Defendant, | |
| TAHOMA AUDUBON SOCIETY; PETRINA VECCHIO, STEVE REDMAN, BETH REDMAN, CLARE DUNCAN MCCAHILL, DR. PETER WOODS MCCAHILL, GEORGE WEARN, LEIGH WEARN, BUD REHBERG, and JAMES HALMO, | |
| Appellants. | |

GLASGOW, C.J.—More than 20 years ago, in 2000, the Pierce County hearing examiner approved a conditional use permit authorizing Park Junction LLC to build a large resort near Mount Rainier National Park. The permit stated that if the project did not progress "in a reasonable and consistent manner," the county could initiate an action to revoke the permit. In 2019, the hearing examiner found that Park Junction had violated this condition, so its permit was subject to revocation. Rather than immediately revoke the permit, the hearing examiner encouraged Park Junction and Pierce County to create milestones that the company could realistically meet to come back into compliance.

Park Junction and Pierce County agreed that the first milestone would consist of building two artificial wetlands. But Park Junction missed the milestone deadline. Pierce County initiated revocation proceedings and the hearing examiner revoked Park Junction's conditional use permit.

Park Junction then filed a Land Use Petition Act (LUPA)[1] petition in superior court. The superior court remanded the case to the hearing examiner, reasoning that the record did not show whether Park Junction knew what the first milestone required or whether Park Junction should have received an extension due to COVID-19. Tahoma Audubon Society and several individual citizens appeal, arguing that revocation was proper.

We reverse the superior court and affirm the hearing examiner's revocation of the conditional use permit.

FACTS

A.      Conditional Use Permit Approval

In 1994, Park Junction, a company in Elbe, applied for a permit to build a resort about 11 miles from Mount Rainier National Park. In 2000, the hearing examiner approved a conditional use permit authorizing construction of the resort. The resort was to consist of an 18-hole golf course, 270-room lodge, 500-person conference center, 300 condominiums, a retail center, and other features.

The 2000 permit imposed numerous conditions. Condition 34 stated that if "at any time after a final plan has been approved it appears that the project or phase thereof is *not progressing in a reasonable and consistent manner* or the project has been abandoned, action may be initiated . . . to revoke the approval." Clerk's Papers (CP) at 2171 (emphasis added). Condition 35 stated

---

[1] Chapter 36.70C RCW.

that the hearing examiner would hold a review hearing every three years to "review the status of the development, as well as its consistency with the . . . conditions." *Id.*

Tahoma Audubon Society, an environmental conservation organization in Pierce County, appealed both the 2000 decision and the decision on reconsideration to superior court and subsequently to this court. We upheld the hearing examiner's decisions in 2005. *Tahoma Audubon Soc'y v. Park Junction Partners*, 128 Wn. App. 671, 686, 116 P.3d 1046 (2005).

B.      Park Junction's Progress from 2005 to 2019

The hearing examiner held the first review hearing in 2012. The hearing examiner noted that while "the first tri-annual review hearing should have occurred around . . . 2008," it did not take place because of "worsening economic conditions," as well as a "serious injury to one of [Park Junction's] principals." CP at 2184-85. The hearing examiner concluded that from 1994 to 2007, Park Junction "made significant progress in obtaining permits and plan approvals" for the resort, but "the economic recession and lack of funding prohibited" Park Junction from doing any work at the site other than logging trees. CP at 2191. The hearing examiner decided that Park Junction had generally complied with the conditions of approval, directing staff to set the matter for another review hearing in six to nine months.

The hearing examiner held a second review hearing in 2014. This hearing was delayed due to the death of a principal who was "the chief moving force behind the project." CP at 2207. The hearing examiner found that although "little, if any, progress" had been made between the first review hearing and several weeks before this hearing, Park Junction "was essentially unable to proceed due to circumstances beyond its control." CP at 2208. The deceased principal had been a 50 percent owner of Park Junction and they "had a complicated estate." *Id.* The hearing examiner

decided that, considering the principal's death and the continuing recession, Park Junction "made reasonable progress on completion of the project." CP at 2212. But the hearing examiner added that "these factors are now resolved and future progress . . . should be as originally contemplated." *Id.*

The hearing examiner held the third and final review hearing in late 2019. Finding that Park Junction had not abandoned the project, the hearing examiner focused on whether Park Junction had shown that the project was progressing in a reasonable and consistent manner, as required by Condition 34. The hearing examiner found that Park Junction had failed to finalize its proposed sewage plant, water facilities, or wetland protection plan. Because utilities were not available, Park Junction could not complete any development beyond the logging that had occurred in the previous decade. Thus, the hearing examiner decided that Park Junction had "not progressed in a reasonable and consistent manner and [was] subject to revocation of its [permit] pursuant to Condition 34." CP at 2235. However, acknowledging that Park Junction had provided milestones for future progress, the hearing examiner stated that Pierce County should give Park Junction an opportunity to come back into compliance with Condition 34 by meeting the milestones. The hearing examiner concluded, "*Should any delays occur* on the part of the applicant in meeting milestones/commitments or in acquiring any State, Federal, or County permits, *the County should institute revocation proceedings*." *Id.* (emphasis added). Park Junction, Pierce County, and the Tahoma Audubon Society all filed requests for reconsideration.

In January 2020, the hearing examiner clarified the milestone-setting process in a decision on reconsideration. The hearing examiner's decision directed the parties to agree on milestones, provide them to Tahoma Audubon Society for comment, and submit the milestones and comments

to the hearing examiner.[2] The decision stated that the parties could present disagreements to the hearing examiner for resolution.

C.    First Milestone

Pierce County worked with Park Junction "on milestones that were reasonable, achievable, and acceptable" to the company. CP at 1549. In February 2020, Park Junction agreed to create two artificial demonstration wetlands to address Pierce County's concerns about its plan to mitigate the resort's environmental impact. Pierce County's "concern, in large part, was over the proposal to use clay liners to seal the wetlands and provide the needed hydrology." CP at 1550. The parties agreed on a deadline of October 30, 2020, for constructing the two demonstration wetlands.

A March 2020 drainage report prepared for Park Junction stated, "What is being proposed at this point is to grade two areas . . . that will serve as test wetlands for the final wetland mitigation," a plan for lessening the resort's impact on wetlands in the area. CP at 1759. The April 2020 wetland mitigation plan prepared by one of Park Junction's consulting biologists stated, "Agreement has been reached with Pierce County . . . to construct wetland mitigation areas MA1 and MA3 in Phase 1 of the project in 2020 to demonstrate the reliability of the soil seals to create wetland hydrology." CP at 1703.

Pierce County approved the plan for construction of the demonstration wetlands in July 2020. Pierce County's approval document stated, "It [is] the intent of the applicant to construct these two mitigation areas by October 30, 2020." CP at 1672. Park Junction did not need state or federal approval to create the demonstration wetlands.

---

[2] The original deadline for milestone submission was February 18, 2020. However, the hearing examiner extended this deadline several times due to prolonged negotiations and the COVID-19 pandemic.

Pierce County submitted the finalized milestones by October 6, 2020. The first milestone required Park Junction to complete "preliminary wetland mitigation work . . . including the grading work required for the construction of the wetlands" by October 30, 2020. CP at 1884. Specifically, it required that "*[s]ome or all* of the mitigation wetlands shall be physically constructed" and specified that the "demonstration wetlands shall be located south of Sahara Creek." CP at 1885 (emphasis added). The purpose was to show "that the proposed sealing method [would] successfully provide the proposed mitigation wetland hydro-regimes." CP at 1884.

In an October 6, 2020 letter to the hearing examiner, Park Junction's attorney wrote that the company could "meet the submittal dates." CP at 1933. He added, "[T]he test wetlands . . . are under construction as I write this." *Id.*

On October 28, 2020, the hearing examiner set out the final version of the milestones. The hearing examiner made two changes relevant to this appeal. They extended the deadline for the first milestone by one month and substituted the phrase "Some or all" with "A majority or all:"

> By *November 30, 2020*, [continued one month due to the date of this decision] preliminary wetland mitigation work described below, including the grading work required for the construction of the wetlands. The purpose of said work is to demonstrate that the proposed sealing method will successfully provide the proposed mitigation wetland hydro-regimes. Such requires the following:
>
> (a.) *A majority or all* of the mitigation wetlands shall be physically constructed.
>
> (b.) The demonstration wetlands shall be located south of Sahara Creek. The purpose for staying south of the creek is to possibly limit the need for approvals from other agencies (for that limited work).

CP at 2257 (emphasis added) (alteration in original).

On November 4, 2020, Park Junction's attorney sent a letter to Pierce County's planner "to clarify [their] mutual understanding of the [hearing examiner's] requirement regarding completion

of [the] mitigation wetlands." CP at 1935. Noting that the only work Park Junction was legally permitted to accomplish that month was the completion of the two demonstration wetlands, he sought "to confirm that the County shares [Park Junction's] view that the 'all or a majority' language pertains to the two demonstration wetlands currently permitted." *Id.* He added, "We also believe these two represent a majority of the wetlands to be constructed south of the creek, but that is more complicated, and the applicant needs a clear way to meet the milestones." *Id.*

The hearing examiner responded to the attorney's question about a week later. The hearing examiner noted that while subparagraph (a) of the first milestone required a majority or all of the *mitigation* wetlands to be physically constructed, subparagraph (b) referred to *demonstration* wetlands south of Sahara Creek. Explaining that the intent of the milestone was "that a majority or all of the 'demonstration' wetlands be physically constructed by November 30, 2020," the hearing examiner replaced the word "mitigation" with the word "demonstration." CP at 2267. Subparagraph (a) of the milestone became: *A majority or all* of the *demonstration* wetlands shall be physically constructed.

On November 30, 2020, Pierce County staff contacted Park Junction's "wetland and geotechnical consultants to see if the wetland creation work was completed." CP at 1550. "They did not know." *Id.* As a result, on December 1, 2020, the planner visited the site of the demonstration wetlands unannounced. He found that the "eastern test wetland appeared to have been rough graded but no [clay] liner was observed and no planting had occurred." *Id.* He also found that while there was heavy equipment working at the western test wetland, "only rough grading appeared to have occurred." *Id.* "No clay lining was observed and no vegetation appeared to have been planted." *Id.*

Pierce County initiated revocation of the conditional use permit based on Pierce County Code 18.150.050(B) and (D). In relevant part, the ordinance states that revocation of a permit "shall be made on any one or more of the following grounds:"

> B. That the use for which such approval or permit was granted is not being exercised;
> . . . .
> D. That the approval or permit granted is being, or recently has been, exercised contrary to the terms or conditions of such approval or permit, or in violation of any statute, resolution, code, law, or regulation.

PIERCE COUNTY CODE (PCC) 18.150.050.

In Pierce County's report recommending revocation, it noted that Park Junction could still build a resort on the site, but it would need a new permit, explaining that regulations have changed since the project was first approved.

D.      Permit Revocation

The hearing examiner held a permit revocation hearing in February and March 2021. Park Junction argued in its opening statement that COVID-19, which caused backlogs in the construction industry, slowed down the project "through no fault of the partners." CP at 3897.

At other points in the hearing, several of Park Junction's experts expressed confusion about who the monitoring biologist was for the wetlands project. Additionally, Park Junction's project manager expressed confusion about the content of the first milestone, at one point stating that one wetland had been completed the day after the final deadline in spite of the fact that the clay had not been spread.

Park Junction's project manager said that after the Department of Ecology approved Park Junction's wetland mitigation plan, she thought Park Junction only had to build one demonstration wetland. The attorney representing Tahoma Audubon Society asked the project manager, "At any

time in your meetings with [Pierce County] . . . did you ever tell [the planner], or anyone else, that the reference to two wetlands was misstated and that you only had to do one of the two . . . test wetlands?" CP at 3953. She replied, "Well, that conversation was between [the consulting biologist] and I that we only needed to do one." *Id.* The attorney asked, "But you didn't communicate that understanding to anyone at the county." *Id.* She replied, "No." *Id.*

The attorney later asked the consulting biologist if, as of July 2020, Pierce County expected two test wetlands. He said, "Yeah, that was quite clear. If I may expand upon that, there's been . . . some discussion whether we needed one or two, and I think the confusion on that originated with me. I take responsibility for that." CP at 4012. He added, "[I]n any event, [Park Junction] decided to go ahead with both of them, and I was informed that they were going ahead with both of them." CP at 4013-14.

One of Park Junction's wetland biologists testified that COVID-19 affected their work. But there was testimony from Park Junction's project civil engineer that despite COVID-19 shutdowns, construction work on the demonstration wetlands could have begun "probably . . . at the end of May." CP at 32 (hearing examiner's summary of testimony). Because approvals were obtained to construct the demonstration wetlands in July 2020, he saw no issue with completing the wetlands.

The hearing examiner revoked the permit in May 2021. The decision stated that to fully evaluate Pierce County's revocation request, it was important to consider the project's overall progress, and Park Junction had demonstrated a "lack of progress in a reasonable and consistent manner." CP at 1517. For example, in 19 years, neither water nor sewage systems had been properly permitted or built, water was still not available at the site, and wetland protection had not been finalized. CP at 41-42 (Findings of Fact (FF) 10). The hearing examiner cited to multiple

communications from various permitting authorities indicating that Park Junction had not provided all of the necessary information for the necessary permits. CP at 45-47 (FF 10). The hearing examiner, who had served in that role since the permit was granted in 2000, found that "the record [showed] a history of excuses and mismanagement that previously delayed the project." CP at 48 (FF 12). The hearing examiner further found "that the elements causing past delays, to include inadequate supervision and organization[,] remain," and these elements would "likely prevent timely processing of the project to completion." *Id.*

Noting that Park Junction did not meet the first milestone, the hearing examiner addressed Park Junction's argument that the goalpost moved after the change in milestone language from "'some or all' of the mitigation wetlands" to "'a majority or all of the mitigation wetlands.'" CP at 49. The hearing examiner found that "from the very beginning of the negotiations for milestones," Pierce County and Park Junction "referred to the 'two' mitigation or test wetlands," and that "[n]owhere in the correspondence between the parties was 'one' test wetland ever mentioned." *Id.* The hearing examiner found that if the "language of 'some or all' limited the number of test wetlands to only one, then said language was not consistent with the understanding of the parties as set forth in abundant communications," and the "use of the term 'majority,' while not clear, would only have restated the requirement for two wetlands as contemplated from the beginning." CP at 52 (FF 16).

The hearing examiner stated that Park Junction's failure to meet the first milestone was "especially egregious" because Park Junction "either set the date for the milestone itself" or "specifically agreed to" it. *Id.* (FF 17). The hearing examiner found that Park Junction never advised Pierce County that it would be late, never requested an extension, "and presented

testimony (from the project manager) that [Park Junction] completed the work only one day late, when such was obviously not true." CP at 54. The hearing examiner added that Park Junction had raised its challenges related to COVID-19 "only after its failure to meet the milestone." CP at 56.

Conceding that Pierce County had historically used the revocation remedy only when an applicant had caused irreparable harm or abandoned a project, the hearing examiner found that it was nonetheless appropriate to revoke Park Junction's permit. The hearing examiner stated that "granting yet another opportunity to bring the project into compliance with Condition 34 is not warranted and would be futile," reasoning that Park Junction's "past and present performance provide no confidence that it can complete [the] project in a reasonable and consistent manner, if at all." CP at 56 (FF 20).

The hearing examiner concluded that Park Junction's failure to meet the first milestone "and its mismanagement of the construction of the test wetlands [showed] a continuation of violations of" PCC 18.150.050(B) and (D), as well as Condition 34, which required Park Junction to keep the project progressing in a reasonable and consistent manner. *Id.*

Park Junction filed a request for reconsideration of the decision revoking its permit, which the hearing examiner denied.

E.      LUPA Petition

In August 2021, Park Junction filed a LUPA Petition challenging its permit revocation in Pierce County Superior Court. The superior court found that substantial evidence did not support the hearing examiner's statement that Park Junction agreed to construct two demonstration wetlands by October 30, 2020. The superior court reasoned, "When analyzing the revocation of a vested right, fundamental fairness and due process requires that the party against whom the

revocation is brought know exactly what was required of them and had reasonable time to complete it." CP at 4183. The superior court added that the record did not make it clear "whether Park Junction had either." *Id.*

The superior court remanded the case to the hearing examiner "for future evidentiary proceedings" to answer a series of questions related to the parties' understanding of the milestones, the effect of the hearing examiner's changes to the milestone language, and the effects of COVID-19 on Park Junction's ability to meet the first milestone. CP at 4185. The superior court ruled that after answering the questions, the hearing examiner should determine again whether to revoke Park Junction's permit.

The Tahoma Audubon Society and individual appellants appeal.

ANALYSIS

A.      Standard of Review

The Land Use Petition Act governs judicial review of land use decisions. RCW 36.70C.010; *Whatcom County Fire Dist. No. 21 v. Whatcom County*, 171 Wn.2d 421, 426, 256 P.3d 295 (2011). We "sit in the same position as the superior court and apply the standards set forth in RCW 36.70C.130(1) to the administrative record that was before the body responsible for the land use decision," in this case the hearing examiner. *Id*.

To set a land use decision aside, the party seeking relief must establish one of the following requirements, relevant here:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts.

RCW 36.70C.130(1)(a)-(d).

Park Junction contends that the hearing examiner's "decision as set forth in both the Revocation Decision . . . and the Reconsideration Decision" is an erroneous interpretation of the law, "not supported by . . . substantial evidence," and an "erroneous application of the law to the facts." Resp't's Am. Opening Br. at 4. Whether a land use decision is an erroneous interpretation of the law is a question of law that we review de novo. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011). A finding of fact in a land use decision is not supported by substantial evidence when the record lacks "a sufficient quantum of evidence . . . to persuade a reasonable person that the declared premise is true." *Id.* at 829. An application of law to facts is clearly erroneous when the reviewing court "'is left with the definite and firm conviction that a mistake has been committed.'" *Whatcom County. Fire Dist.*, 171 Wn.2d at 427 (internal quotation marks omitted) (quoting *Norway Hill Pres. & Prot. Ass'n v. King County Council*, 87 Wn.2d 267, 274, 552 P.2d 674 (1976)).

B.      Permit Revocation Under PCC 18.150.050

Park Junction argues that the hearing examiner erred in revoking its conditional use permit under PCC 18.150.050(B) and (D). Resp't's Am. Opening Br. at 3. We disagree.

The Pierce County Code provides that the county hearing examiner "has the authority to revoke or modify any permit or approval which was issued pursuant to the" hearing examiner's review. PCC 18.150.020. An action to revoke a permit issued pursuant to the hearing examiner's review "shall be made" where "the use for which such approval or permit was granted is not being

13

exercised." PCC 18.150.050(B). "'Use' means the purpose or activity for which land or buildings are arranged, or intended, or for which land or buildings are occupied or maintained." PCC 18.25.030.

Additionally, the county can initiate an action to revoke a permit when the applicant exercises the permit contrary to its conditions. PCC 18.150.050(D). Condition 34 of Park Junction's permit stated that the project would be subject to revocation if "at any time after a final plan has been approved it appears that the project . . . is not progressing in a reasonable and consistent manner or the project has been abandoned." CP at 2171.

1.      Interpretation of PCC 18.150.050

The hearing examiner did not misstate or misunderstand the applicable law. The hearing examiner agreed with Pierce County "that the resort use [was] not being exercised and therefore the applicant [was] in violation of Subsection B." CP at 1516. This interpretation of PCC 18.150.050(B) is not erroneous. The ordinance's plain language required Park Junction to exercise "the use for which" the "permit was granted." PCC 18.150.050(B). The relevant definition of "use" in PCC 18.25.030, "the purpose or activity for which land or buildings are arranged, or intended, or for which land or buildings are occupied or maintained," demonstrates that the word refers to the ultimate purpose for the structures rather than the process of building them. The hearing examiner granted the permit so Park Junction could build a resort. For the past two decades, Park Junction has used the permit to log trees and begin constructing demonstration wetlands. It has failed to make meaningful progress to build a resort after nearly two decades.

Park Junction equates PCC 18.150.050(B) with abandonment and concludes that because the hearing examiner declined to find abandonment, (B) could not be satisfied. While Park

14

Junction is correct that the hearing examiner found Park Junction had not abandoned the project completely, PCC 18.150.050(B) plainly does not require a showing of abandonment. It only requires a showing that the permit holder is failing to use the permit as intended.

Likewise, the hearing examiner's interpretation of PCC 18.150.050(D) was not erroneous. The hearing examiner agreed with Pierce County that "the project [was] not progressing in a reasonable and consistent manner, and therefore the applicant [was] in violation of Condition 34, which . . . also [amounted] to a violation of" PCC 18.150.050(D). CP at 1516. This interpretation is consistent with the ordinance's plain language. The ordinance authorizes revocation where "the . . . permit granted is being, or recently has been, exercised contrary to the terms or *conditions* of such approval or permit." PCC 18.150.050(D) (emphasis added). Condition 34 required Park Junction to keep the project progressing "in a reasonable and consistent manner." CP at 2171. Therefore, a lack of reasonable and consistent progress is a failure to satisfy a required condition in the permit.

The hearing examiner did not interpret PCC 18.150.050(B) and (D) erroneously.

2.    Factual findings

Park Junction assigns error to findings of fact 10 and 12 through 20 in the revocation decision and findings of fact 2R through 18R in the reconsideration decision. In its briefing, Park Junction addresses these findings globally rather than providing argument specific to each challenged finding. Therefore, we address the challenged findings globally as well.

Substantial evidence supports the hearing examiner's findings of fact. When we review a hearing examiner's factual findings for substantial evidence in a LUPA case, we defer to the hearing examiner's credibility determinations. *City of Univ. Place v. McGuire,* 144 Wn.2d 640,

652, 30 P.3d 453 (2001). And because the hearing examiner was the highest forum that exercised fact-finding authority, we recognize the hearing examiner was in the best position to weigh conflicting evidence and competing inferences. *See id.* Thus, the mere presence of conflicting evidence in the record is not enough for us to conclude that substantial evidence does not support a factual finding under LUPA. *See id.* A land use decision is not supported by substantial evidence when the record lacks "a sufficient quantum of evidence . . . to persuade a reasonable person that the declared premise is true." *Phoenix Dev., Inc.,* 171 Wn.2d at 829.

Park Junction challenges numerous findings of fact, and its challenges center on four main themes in the hearing examiner's factual findings: that mismanagement delayed the project; that Park Junction did not meet the first milestone deadline, which required the company to build two demonstration wetlands; that Park Junction never told Pierce County or the hearing examiner that it would not be able to meet the deadline; and that Park Junction only raised COVID-19 as a cause of delay after the company failed to meet the first milestone.

There is substantial evidence in the record that mismanagement delayed resort completion. In 2019, almost 20 years after the hearing examiner approved Park Junction's permit, Park Junction had not finalized even its *permits and plans* for its sewage plant and water facilities, and neither of these had been constructed. CP at 2422 (setting the finalization of sewer design and well tests as later milestones); CP at 2445-47 (chart showing that the waste water treatment plant design and permitting, as well as water system design approval and construction, still needed to be completed).

The hearing examiner decided that the conditional use permit was subject to revocation but gave Park Junction one last chance to show sufficient progress by meeting certain milestones,

emphasizing that if "*any delays*" were to occur, Pierce County "should *institute revocation proceedings*." CP at 2235 (emphasis added). Then, on the day of the first milestone deadline, Pierce County staff contacted Park Junction's "wetland and geotechnical consultants to see if the wetland creation work was completed" and they did not know. CP at 1550. The revocation hearing revealed more confusion: Park Junction's experts did not know who served as the monitoring biologist for the wetlands project, the experts involved did not know who was responsible for monitoring the demonstration wetlands, and the company's project manager testified that, in spite of ample documents showing otherwise, she believed Park Junction had to complete only one of two demonstration wetlands. Her belief was based on a conversation with one of Park Junction's consultants, not on any communication with Pierce County. She did not contact the county to clarify or confirm her belief.

There is also substantial evidence that the first milestone required Park Junction to construct two demonstration wetlands and that Park Junction failed to meet this deadline. Park Junction's March 2020 drainage report, the company's April 2020 wetland mitigation plan, and Pierce County's July 2020 approval document for the construction all referenced two demonstration wetlands that would be lined by a specific clay. In November 2020, Park Junction's attorney asked the planner to confirm that the milestone's "'all or a majority' language [pertained] to the two demonstration wetlands currently permitted." CP at 1935. At the February 2021 revocation hearing, a consulting biologist for Park Junction testified that it was "quite clear" that Pierce County expected two demonstration wetlands to be constructed. CP at 4012. Park Junction's civil engineer testified that "constructed" meant "to construct and shape these wetland areas . . . [to] prove to the county that the liner could be used to hold the water through the dry season." CP

at 3918. Thus, both before and after the hearing examiner changed the milestone language in October 2020, Park Junction representatives expressed an understanding that the milestone required the construction of *two* wetlands by the deadline.

When the Pierce County planner visited the project site the day after the deadline, he saw that the wetlands had been "rough graded" but they had not been lined with the clay. CP at 1550. The wetlands were supposed to "demonstrate the reliability of the soil seals to create wetland hydrology" during the 2020-21 rainy season, so the lack of clay linings meant that Park Junction would not have met the milestone even if just one wetland had been required. CP at 1703. Park Junction would not have been able to demonstrate the clay linings worked for another year. *See* CP at 3918.

Finally, there is substantial evidence that Park Junction failed to communicate pandemic-related difficulties with the first milestone deadline before Pierce County recommended revocation. Fewer than two months before the deadline, Park Junction's attorney assured the hearing examiner that the company could "meet the submittal dates" and that the test wetlands were "under construction." CP at 1933. Less than a month before the deadline, Park Junction's attorney contacted Pierce County about the milestone language but never mentioned Park Junction's lack of progress or COVID-19. During the revocation hearing, Park Junction's project manager testified that she did not contact Pierce County about being behind schedule. Park Junction points to nothing in the record contradicting the hearing examiner's finding that there was never a request for an extension based on COVID-19.

Even though there was some conflicting testimony in the record from Park Junction's witnesses, there is sufficient evidence to persuade a reasonable person that mismanagement

delayed the project, that Park Junction did not build two demonstration wetlands or even one by the deadline, and that Park Junction did not communicate its difficulties with the deadline or mention COVID-19 delays to Pierce County until the deadline had passed.

> 3. Application of PCC 18.150.050 to the hearing examiner's factual findings

The hearing examiner's decision to revoke Park Junction's permit under PCC 18.150.050(B) and (D) was not a clearly erroneous application of the law to the facts.

PCC 18.150.050(B) allowed the hearing examiner to revoke the permit if "the use for which such . . . permit was granted [was] not being exercised." The word "use" refers to the end result of development rather than the process of development. PCC 18.25.030. Although Park Junction had the permit for about two decades, it has never used the permit to build a resort or even a structure resembling a resort. Park Junction only logged trees and dug and rough-graded holes for two demonstration wetlands in the span of 19 years.

PCC 18.150.050(D) allowed the hearing examiner to revoke the permit if the "permit granted [was] being . . . exercised contrary to the terms or conditions of such . . . permit." Condition 34 required Park Junction to progress "in a reasonable and consistent manner." CP at 2171. Although Park Junction argues that the failure to meet the wetland milestone should not have been the only reason why (D) was met, it is clear from the record that this was not the only reason. The hearing examiner found in 2019 that Park Junction was violating Condition 34 and gave the company one last chance to come back into compliance by completing a series of milestones. Park Junction missed the first milestone's deadline, thus showing a continued lack of reasonable progress in violation of Condition 34.

We hold that the hearing examiner did not err in revoking Park Junction's permit under PCC 18.150.050(B) and (D).

C.      Historical Use of Revocation and COVID-19

Park Junction argues that the hearing examiner "did not follow the process for revocation as historically provided for [in] revocation applications." Resp't's Am. Opening Br. at 4. Park Junction notes that the hearing examiner "acknowledged that [Pierce County] has rarely invoked revocation . . . and when it has done so the circumstances have been extreme," such as an applicant causing irreparable harm or abandoning a project. *Id.* at 67. Additionally, Park Junction argues that the hearing examiner erroneously failed to consider the impact of COVID-19 on the company's development progress. These arguments fail.

PCC 18.150.050 did not require the hearing examiner to find that the company caused irreparable harm or abandoned its project. Park Junction cites no authority to the contrary. The same hearing examiner presided over hearings about this project from 2000 to 2019 and the hearing examiner explained the extraordinary failure to achieve any meaningful progress in nearly two decades.

Additionally, before Pierce County initiated revocation, Park Junction never requested an extension due to COVID-19. It never gave Pierce County or the hearing examiner any indication that it would have trouble meeting its deadline, so neither party had the opportunity to help the company resolve its challenges or adjust the milestones. Although Park Junction now refers to an ordinance allowing the extension of deadlines during the height of the COVID-19 pandemic, Park Junction blames Pierce County for its lack of knowledge about the ordinance.

But the ordinance allowed extensions of deadlines. It did not require extensions or make them automatic. Ordinance 2020-46, exhibit A (FF 11). And Park Junction did not communicate with Pierce County or request any extension until after it had missed its milestone deadline. Moreover, the hearing examiner noted testimony in the record stating that COVID-19 was not a barrier to completion of the demonstration wetlands. We conclude that under these circumstances, the hearing examiner did not follow an improper process.

CONCLUSION

We reverse the superior court's decision to remand the case to the hearing examiner and affirm the hearing examiner's revocation of the permit.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Cruser, A.C.J.

Veljacic, J.