48 P.3d 997 (2002)
112 Wash.App. 200
WEST COAST, INC., a Washington Corporation, Appellant,
v.
SNOHOMISH COUNTY, a Municipal Corporation, Respondent.
No. 48439-7-I.
Court of Appeals of Washington, Division 1.
May 6, 2002.
Publication Ordered June 18, 2002.
*999 W. Mitchell Cogdill, Everett, for Appellant.
Thomas M. Fitzpatrick, Everett, for Respondent.
*998 COX, A.C.J.
This is an action for damages arising from Snohomish County's denial of a preliminary plat application for a subdivision. West Coast maintains that the County misrepresented its policy regarding the imposition of a development moratorium on property logged under a Class III non-conversion permit. West Coast further claims that it relied on those representations when deciding to purchase the land in question and was damaged as a result. West Coast appeals the adverse judgment on its negligent misrepresentation claim against the County. West Coast also appeals the summary dismissal of its intentional misrepresentation claim.
Because West Coast failed to establish a genuine issue of material fact for the intentional misrepresentation claim, the trial court properly granted summary judgment. And the public duty doctrine bars West Coast's recovery for negligent misrepresentation. Moreover, the hearing examiner's decision denying West Coast's preliminary subdivision application was a superseding intervening cause precluding County liability for negligent misrepresentation. We affirm.
West Coast, Inc. develops real estate and owns several acres of real property, known as Diamond Ridge Estates, in Snohomish County. John Robinett is the president of West Coast, and Gary Ball is the vice-president. West Coast purchased Diamond Ridge from Peter Krenzke in 1996. While he was the owner, Krenzke obtained a Class III non-conversion permit from the Washington State Department of Natural Resources and logged the property extensively.
In the spring of 1996, West Coast learned that the property was for sale. West Coast knew that Krenzke had logged the property under a Class III non-conversion permit. West Coast also knew that the County could apply a six-year moratorium on development to property logged under such a permit. Concerned about this possibility, Robinett and Ball met with Steve Holt, the Director of the County's Department of Planning and Development Services (PDS), before purchasing the property to discuss the County's policy regarding application of the moratorium. West Coast's attorney, Martin Robinett, also attended the meeting.
West Coast argues that, during this meeting, Holt misrepresented the County's policy regarding its discretionary application of the six-year development moratorium. West Coast purchased the property in July 1996, several weeks after this meeting. The next month, West Coast submitted an application for a rural cluster subdivision called Diamond Ridge Estates. In mid-November 1997, the PDS staff recommended that the County apply the six-year moratorium and deny the application. After a hearing, Snohomish County hearing examiner John Galt denied West Coast's application. West Coast appealed to the County Council, which affirmed the hearing examiner's decision.
West Coast filed a petition under LUPA, along with a claim for damages. West Coast also commenced this action alleging tort claims. The trial court consolidated the cases, and summarily dismissed all but *1000 West Coast's claim for negligent misrepresentation. After a bench trial, the court entered a judgment in the County's favor on West Coast's claim for negligent misrepresentation. West Coast appeals the summary dismissal of its claim for intentional misrepresentation, and the adverse judgment on its claim for negligent misrepresentation.[1]

Intentional Misrepresentation
West Coast argues that the trial court erred by summarily dismissing its intentional misrepresentation claim. We hold that summary judgment was proper.
This court will affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[3] Our review of questions of law is de novo.[4]
The moving party bears the initial burden of showing the absence of a genuine issue of material fact.[5] Once met, the burden shifts to the party with the burden of proof at trial to make a showing sufficient to establish the existence of an element essential to that party's case.[6] If the claimant fails to meet that burden, summary judgment is appropriate because there can be no genuine issue of material fact given that a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[7]
The nine elements of intentional misrepresentation, or fraud, are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff.[8]
West Coast failed to establish that there were genuine issues of material fact with respect to the first essential element. A promise of future performance is not a representation of an existing fact and will not support a fraud claim.[9] According to West Coast, Holt promised that the County would not automatically impose a development moratorium on Category III and IV wetlands. West Coast also argued that Holt promised that, were mitigation necessary, the County would not require the company to return the property to its pre-logged state. These are promises of future performance by the County, and are not representations of existing facts.
Because a failure to establish an element essential to its claim makes all other elements immaterial, West Coast failed to establish that there were genuine issues of material fact sufficient to withstand the County's motion for summary judgment. Summary dismissal of its intentional misrepresentation claim was proper.

Negligent Misrepresentation
West Coast argues that the trial court erred by concluding that the public duty *1001 doctrine bars it from recovering against the County as a matter of law. We disagree.
We review the trial court's findings of fact to determine whether they are supported by substantial evidence in the record.[10] We then determine whether those findings of fact support the trial court's conclusions of law.[11] Unchallenged findings are verities for purposes of appeal.[12] We review conclusions of law de novo.[13]
Under the public duty doctrine, a government entity will not be liable for negligence unless the entity owes a duty to the plaintiff as an individual, rather than to the public in general.[14] There are four exceptions to the public duty doctrine, including (1) legislative intent; (2) failure to enforce; (3) the rescue doctrine; and (4) a special relationship.[15]
West Coast argues that the special relationship exception applies here. Under this exception, "[a] special relationship arises where `(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) give rise to justifiable reliance on the part of the plaintiff.'"[16] The government may only be bound "where a direct inquiry is made by an individual and incorrect information is clearly set forth by the government, the government intends that it be relied upon and it is relied upon by the individual to his detriment[.]"[17] Under this standard, West Coast must establish that it made specific inquiries and received express assurances in return.[18]
West Coast argues that it asked Holt specific questions during the meeting, and he responded with express assurances. But the trial court found otherwise:
[West Coast's] representatives did not provide a detailed description of the property or its actual development plan. In answering various questions, Mr. Holt did not request any additional information. The discussion at the meeting was a general policy discussion. This was not a situation where detailed technical information was relayed and conveyed. The plaintiff did not seek specific assurances in regard to the Diamond Ridge Estates project, and Mr. Holt did not provide specific assurances in regard to the project.[[19]]
Substantial evidence supports this finding. For example, Holt testified that West Coast's representatives did not identify any specific proposed project. According to Holt, they instead discussed various hypotheticals. Holt also stated that West Coast's representatives did not provide him with any maps, pictures or diagrams of any particular piece of property. John Robinett also testified that their discussion was "not project-specific." And Gary Ball agreed that they did "not speak specifically of this particular site," and that their discussion "was general in nature...." The trial court did not err by characterizing a conversation in which no specific project was discussed as "a general policy discussion."
*1002 Despite the fact that the parties did not discuss the Diamond Ridge project, West Coast argues that their questions and Holt's responses were specific enough to give rise to a special relationship. This argument is unpersuasive.
The trial court found that "Holt told them that the development would be reviewed by the staff and each application would be reviewed on a case by case basis, and there would not be an automatic rejection or negative recommendation."[20] The trial court also found that "Holt informed the plaintiff that absent substantial destruction to the wetlands, which had been described to him as Class III and Class IV, the plaintiff would be able to mitigate any damage to the wetlands that had been done by the prior logging."[21]
But these remarks were not express assurances regarding the Diamond Ridge project. West Coast did not identify the project for which it ultimately sought approval. Holt did not assure West Coast that the County would approve its application. Nor did he assure West Coast that the County would not apply the moratorium. Because the trial court's findings that West Coast made no specific inquiries about the Diamond Ridge project, and Holt made no express assurances about that project are supported by substantial evidence, the legal conclusion that the special relationship exception to the public duty doctrine does not apply is correct.
West Coast argues that the trial court erred by concluding that the hearing examiner's decision denying its subdivision application was a superseding intervening cause precluding County liability for Holt's alleged negligent misrepresentations. We hold that the hearing examiner's decision was a superseding cause that precluded County liability.
Our courts have adopted the elements of negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552:
One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.[[22]]
A plaintiff must prove each of these elements by clear, cogent, and convincing evidence.[23]
At trial, West Coast maintained that Holt engaged in negligent misrepresentation during the meeting with John Robinett, Martin Robinett, and Gary Ball. It argued that Holt misrepresented the County's policy regarding its discretionary application of the six-year development moratorium under RCW 76.09.060(3)(b)(i) to land logged under a non-conversion permit.[24] According to West Coast, Holt stated that the County would not automatically impose this development moratorium on property with Category III and IV wetlands. West Coast also argued that Holt also assured its principals that, were mitigation necessary, West Coast would not have to return the property to its pre-logged state. West Coast argued that it relied on these representations when deciding to purchase *1003 the Diamond Ridge property, and was damaged as a result when the County later denied its subdivision application. The County, in contrast, maintained that the discussion was simply a general one regarding mitigation and the County's policy when deciding whether to impose the six-year moratorium under the Forest Practices Act.
The trial court resolved these conflicting factual assertions. The court entered a judgment in the County's favor, concluding that neither the County nor any of Holt's representations were the proximate cause of any damages West Coast might have suffered. It instead concluded that "[a]ny damages incurred would have been the result of the action of the Hearing Examiner, acting independently in a quasi-judicial capacity, in denying the application."[25]
West Coast challenges this conclusion. But because the trial court's decision that the hearing examiner's decision constituted a superseding intervening cause precluding County liability for Holt's alleged misrepresentations is correct, we reject West Coast's argument.
For negligent conduct to constitute proximate cause, that "conduct must cause in a direct sequence, unbroken by any independent cause, the injury complained of."[26] Relying on Hoffer v. State,[27] West Coast argues that the hearing examiner's decision denying its subdivision application was not an independent cause sufficient to break the chain of causation between Holt's statements and its alleged damages. But that case is distinguishable.
In Hoffer, bondholders brought suit against the State to recover money they had been unable to collect on their bonds after the Washington Public Power Supply System defaulted.[28] The bondholders alleged several causes of action, including one for negligent misrepresentation. They maintained that the State Auditor had failed to inform them of weaknesses in their investments and sent letters that contained negligent misrepresentations.[29] The trial court dismissed the claim under CR 12(b)(6) based on the public duty doctrine and lack of legal causation.[30] Our Supreme Court reversed, concluding that, at least for purposes of CR 12(b)(6), the bondholders had stated a remediable claim for negligent misrepresentation.[31]
In doing so, the Court recognized that "two intervening causes might have broken the causal connection between the Auditor's failure to warn and the bondholders' damages." Those potentially intervening causes were the default of the Supply System, and the Court's own opinion releasing Washington municipalities and public utilities districts from their post default-obligations. The Court concluded that "these intervening events were not necessarily independent of the Auditor's own acts, because the Auditor's failure to warn allegedly related to the likelihood that these very events would occur." The court accordingly determined that "the proximate cause issue [did] not justify dismissing the bondholders' statutory duty claims on a CR 12(b)(6) motion."[32]
Unlike the Hoffer court, which was reviewing a dismissal under CR 12(b)(6), we are reviewing findings and conclusions entered after trial.[33] Here, the trial court specifically determined, after hearing all of the *1004 evidence at trial, that the hearing examiner was "acting independently" when he denied West Coast's application, and concluded that neither the County nor Holt's statements were the proximate cause of its alleged damages.[34] Unchallenged findings of fact support this conclusion. For example, the court found that:
Both the plaintiffs and PDS staff knew that the PDS would make a recommendation concerning the specific property and application to the Snohomish County Hearing Examiner. The Hearing Examiner would make the ultimate decision and the Hearing Examiner was free to either reject or accept the PDS recommendation and interpretations.[[35]]
The court also found that:
The plaintiff then sought a hearing before the Hearing Examiner, requesting approval of the rural cluster subdivision proposed by [the] plaintiff. The plaintiff, as an experienced developer, knew that the Hearing Examiner would be making an independent decision on the application. Hearing Examiner John E. Galt conducted a hearing on the matter and issued an opinion which is trial exhibit 14.[[36]]
Because West Coast has not assigned error to either of these factual findings, they are verities on appeal. West Coast nevertheless argues that the hearing examiner's decision was not an independent intervening event because "it was not independent of the representations made by Mr. Holt." West Coast appears to argue that Holt's statements not only related to its decision to purchase the property, but also related somehow to the staff's decision to recommend denial. It contends that the hearing examiner's decision was then "the result of the input of the staff."
But as the unchallenged findings establish, the hearing examiner was free to accept or reject the staff's recommendation in reaching his independent decision. The fact that the hearing examiner chose to accept that recommendation does not mean that his decision had anything to do with what Holt said at the meeting. In fact, the hearing examiner specifically concluded that any statements made during that meeting were not relevant to its decision, and declined to consider them any further.[37]
The hearing examiner predicated his application of the six-year moratorium on several factors unrelated to Holt's alleged statements. For example, the hearing examiner noted that it was within his discretion under RCW 76.09.060(3)(b) to impose the moratorium "solely on the basis that the property was logged under a Class 3 non-Conversion FPA permit and that conversion is being sought within six years of the FPA application."[38] The hearing examiner also concluded West Coast had not accurately quantified the "extent of logging impact," and that "the extent of impact lends further support to imposition of a six year moratorium."[39] As the trial court noted, West Coast has not appealed the hearing examiner's findings and conclusions, which "have become verities as between the parties."[40] West Coast simply has not shown how any of Holt's alleged statements related to the likelihood that the hearing examiner would ultimately deny West Coast's application.
Relying on Tyner v. Dep't of Social and Health Services,[41] West Coast maintains that the hearing examiner's decision denying its application was not an intervening event because the County failed to provide the hearing examiner with all material information. West Coast's reliance on Tyner is misplaced.
In Tyner, a father commenced an action against the Department of Social and Health Services (DSHS) and the State, claiming that *1005 a negligent Child Protective Services investigation resulted in a lengthy separation from his two children.[42] Our Supreme Court held "that a judge's no-contact order will act as [a] superseding intervening cause, precluding liability of the State for negligent investigation, only if all material information has been presented to the court and reasonable minds could not differ as to this question."[43] It concluded that a court order will not break the causal chain in a negligent investigation case "where the State has failed to supply sufficient material information."[44] Noting that the State had withheld two items that a "jury could have determined were material information that should have been supplied to the court," the Court reinstated the jury's verdict awarding damages to the father.[45]
Here, in contrast, the hearing examiner received all material information before denying West Coast's application. Both John Robinett and Marty Robinett testified at length before the hearing examiner as to what Holt told them during their meeting. Although Holt did not testify, he provided the hearing examiner with a written statement in which he indicated that the staff's position was the County's official policy. The hearing examiner was certainly aware that the parties disputed "exactly what was said and meant" during their meeting. But the hearing examiner ultimately determined that "[t]hose conversations [had] no relevance to the issues in this case," and declined to address them any further.[46] By abandoning its LUPA appeal, West Coast has waived any claim that the hearing examiner erred in concluding that those discussions were not material.[47] Because whatever Holt might have said during that meeting was not material to the hearing examiner's decision, Tyner is inapplicable here.
The trial court correctly concluded that the hearing examiner's decision constituted a superseding intervening cause precluding County liability for Holt's alleged misrepresentations.
Because there is no liability, we need not reach the question of damages. We affirm the judgment and the summary judgment order.
APPELWICK, J., and ELLINGTON, J., concur.
NOTES
[1] In its notice of appeal, West Coast also sought review of the trial court's November 10, 1998 order summarily dismissing its claims under LUPA, and the court's order denying reconsideration, entered December 15, 1998. (Clerk's Papers at 16-17). But West Coast has since abandoned its LUPA appeal. (Brief of Appellant at 1 n. 1).
[2] CR 56(c); Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993).
[3] Mountain Park Homeowners Association, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994).
[4] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[5] Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989).
[6] Young, 112 Wash.2d at 225, 770 P.2d 182.
[7] Young, 112 Wash.2d at 225, 770 P.2d 182 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[8] Stiley v. Block, 130 Wash.2d 486, 505, 925 P.2d 194 (1996).
[9] Stiley, 130 Wash.2d at 505-06, 925 P.2d 194.
[10] Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 573, 980 P.2d 1234 (1999).
[11] Landmark Dev., 138 Wash.2d at 573, 980 P.2d 1234.
[12] State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
[13] Sherman v. State, 128 Wash.2d 164, 183, 905 P.2d 355 (1995); Dempere v. Nelson, 76 Wash. App. 403, 406, 886 P.2d 219 (1994), review denied, 126 Wash.2d 1015, 894 P.2d 565 (1995).
[14] Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 785, 30 P.3d 1261 (2001); Beal v. City of Seattle, 134 Wash.2d 769, 784, 954 P.2d 237 (1998).
[15] Babcock, 144 Wash.2d at 785-86, 30 P.3d 1261.
[16] Babcock, 144 Wash.2d at 786, 30 P.3d 1261 (quoting Beal, 134 Wash.2d at 785, 954 P.2d 237).
[17] Babcock, 144 Wash.2d at 789, 30 P.3d 1261.
[18] Moore v. Wayman, 85 Wash.App. 710, 718-21, 934 P.2d 707, review denied, 133 Wash.2d 1019, 948 P.2d 387 (1997).
[19] Finding of Fact No. 10 (italics ours).
[20] Finding of Fact No. 12 (unchallenged on appeal).
[21] Finding of Fact No. 13 (unchallenged on appeal).
[22] Mann v. Household Finance Corp. III, 109 Wash.App. 387, 391, 35 P.3d 1186 (2001) (citing Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 180, 876 P.2d 435 (1994) (quoting Restatement (Second) of Torts § 552(1) (1977))).
[23] Mann, 109 Wash.App. at 391, 35 P.3d 1186.
[24] Under former RCW 76.090.060(3), which the parties agree applies here, imposition of the moratorium was discretionary:

(b) ... if the [Forest Practices Act] application or notification does not state that any land covered by the application or notification will be or is intended to be so converted:
(i) For six years after the date of the application the county, city, town, and regional government entities may deny any and all applications for permits or approvals, including building permits and subdivision approvals, relating to nonforestry uses of land subject to the application[.]
The Legislature has since amended this statute to make imposition of the moratorium mandatory. See current RCW 76.09.060(3)(b)(i).
[25] Conclusion of Law No. 3.
[26] Hoffer v. State 110 Wash.2d 415, 424, 755 P.2d 781 (1988) (quoting Alger v. Mukilteo, 107 Wash.2d 541, 545, 730 P.2d 1333 (1987)). See also Attwood v. Albertson's Food Centers, Inc., 92 Wash.App. 326, 330, 966 P.2d 351 (1998) (A proximate cause "is one that in natural and continuous sequence, unbroken by an independent cause, produces the injury complained of and without which the ultimate injury would not have occurred.").
[27] 110 Wash.2d 415, 755 P.2d 781 (1988).
[28] Hoffer, 110 Wash.2d at 416, 755 P.2d 781.
[29] Hoffer, 110 Wash.2d at 417, 755 P.2d 781.
[30] Hoffer, 110 Wash.2d at 421, 755 P.2d 781.
[31] Hoffer, 110 Wash.2d at 429, 755 P.2d 781.
[32] Hoffer, 110 Wash.2d at 424, 755 P.2d 781.
[33] Dismissal under CR 12(b)(6) is appropriate only if it appears beyond a reasonable doubt that the complaint alleges no facts that would justify recovery. Reid v. Pierce County, 136 Wash.2d 195, 200-01, 961 P.2d 333 (1998).
[34] See Conclusion of Law No. 3.
[35] Finding of Fact No. 17.
[36] Finding of Fact No. 20.
[37] Exhibit 14, at 6 (Decision of the Hearing Examiner, Finding of Fact No. 6).
[38] Exhibit 14, at 8 (Decision of the Hearing Examiner, Conclusion of Law No. 3).
[39] Exhibit 14, at 8 (Decision of the Hearing Examiner, Conclusion of Law No. 7).
[40] Conclusion of Law No. 3.
[41] 141 Wash.2d 68, 1 P.3d 1148 (2000).
[42] Tyner, 141 Wash.2d at 71, 1 P.3d 1148.
[43] Tyner, 141 Wash.2d at 88, 1 P.3d 1148.
[44] Tyner, 141 Wash.2d at 86, 1 P.3d 1148.
[45] Tyner, 141 Wash.2d at 87, 89, 1 P.3d 1148.
[46] Exhibit 14, at 6 (Decision of the Hearing Examiner, Finding of Fact No. 6).
[47] Under RCW 36.70C.030(1), LUPA "replaces the writ of certiorari for appeal of land use decisions and shall be the exclusive means of judicial review of land use decisions ...." (italics ours).